IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALICIA TYRRELL and TONI J. DINI,  )
                                  )
            Plaintiffs,            )
                                  )
      v.                           )    No. 11 C 8207
                                  )
ELISABETH MANLY,                   )
                                  )
            Defendant.             )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Elisabeth Manly's (Manly) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in part and the remaining state law claims are dismissed without prejudice.

## BACKGROUND

Manly is allegedly the owner, landlord, and property manager of a nine-unit apartment complex in Glenview, Illinois called Greenwillow (Greenwillow). Plaintiff Alicia Ann Tyrrell (Tyrrell) and Plaintiff Toni J. Dini (Dini) each have two

minor children. Dini and Tyrrell allegedly moved into Greenwillow in June and November 2010, respectively. Plaintiffs contend that Manly discriminated against them because they have children that live with them in their rental units. Plaintiffs also contend that Manly harassed and threatened Plaintiffs with eviction because of Plaintiffs' children's conduct while playing outside the complex at Greenwillow. Plaintiffs allegedly contacted Interfaith Housing Center of the Northern Suburbs (IHC) to complain about Manly's alleged discriminatory practices. IHC allegedly sent testers to attempt to rent apartments at Greenwillow, and Manly allegedly did not return the calls of testers who represented that they had children. Tyrrell's lease allegedly expired in November of 2011, and was not renewed. Dini's lease was allegedly renewed until May of 2012, but her lease was not again renewed after that date. Plaintiffs include in their complaint claims alleging that Manly discriminated against Plaintiffs because they have children in violation of 42 U.S.C. § 3604 (Section 3604) of the Fair Housing Act (FHA) 42 U.S.C. §§ 3601 *et seq.* (Count I), claims alleging that Plaintiffs were harassed, threatened, coerced, and intimidated in violation of 42 U.S.C. § 3617 (Section 3617) of the FHA (Count II), and claims alleging a discrimination in violation of 775 ILCS 5/3-102(A) of the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 *et seq.* (Count III). Manly now moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  FHA Claims

Manly argues that Plaintiffs have not pointed to sufficient evidence for the Section 3604 claims or the Section 3617 claims.  The Seventh Circuit has indicated that an analysis of housing discrimination claims at the summary judgment stage should mirror the analysis for employment discrimination claims.  *See, e.g., East-Miller v. Lake County Highway Dept.*, 421 F.3d 558, 562-63 (7th Cir. 2005).  In response to a defendant's motion for summary judgment on a FHA claim, to prove intentional discrimination, the plaintiff can proceed under the direct method of proof or indirect method of proof.  *Id.*  Plaintiffs argue that in this case they can defeat Manly's motion for summary judgment on the FHA claims under the direct method of proof.  (Ans. SJ 11 n.5).  Under the direct method of proof, a plaintiff must show that intentional discrimination can be inferred from a "convincing mosaic of circumstantial evidence. . . ."  *Jajeh v. County of Cook*, 678 F.3d 560, 570 (7th Cir. 2012)(quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011)(internal quotations omitted).  A convincing mosaic can be shown by: "(1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated

[individuals] were treated differently; and (3) evidence that the [defendant] offered a pretextual reason for" the action that was adverse to the plaintiff. *Id.* (quoting *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012))(internal quotations omitted).

### A. Section 3604 Claims

Manly argues that there is not sufficient evidence that shows that she violated Section 3604. Section 3604 provides in part the following:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful-- . . . (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin. . . .

42 U.S.C. § 3604.

### 1. Testers

Plaintiffs argue that there is evidence that IHC sent testers to attempt to rent apartments at Greenwillow, and that certain testers who represented that they had young children did not receive a call back. (SAF Par. 15-27). However, in this case, Plaintiffs are not contending that Manly refused to rent to them because they have children. In fact, the undisputed evidence clearly indicates the contrary. It is

5

undisputed that in May 2010, Dini contacted Manly and informed her that she wanted to rent an apartment for herself and her two young children. (R SF Par. 5). It is also undisputed that Dini then visited Greenwillow and that "Manly encouraged her to rent the townhouse and advised Dini that there was a park a few blocks away from the Property" that would benefit the children. (R SF Par. 6). It is further undisputed that Manly subsequently rented an apartment to Dini and also renewed her lease on one occasion. (R SF Par. 7-8, 21).

In regard to Tyrrell, it is undisputed that in the fall of 2010, Tyrrell contacted Manly and informed her she wanted to rent an apartment for herself and her two young children. (R SF Par. 9). It is also undisputed that Tyrrell then visited Greenwillow and that "Manly advised Tyrrell that there was a nearby park, other kids picked up the bus right at the Property, there were other kids at the Property, it was a good place for kids, there were a lot of kids in the area and Manly encouraged Tyrrell to rent the townhouse at the Property." (R SF Par 10). It is further undisputed that Manly subsequently rented an apartment to Tyrrell. (R SF Par. 11). It is also undisputed that from 2006 through 2012, twenty-eight tenants have leased units at Greenwillow, that of the twenty-eight tenants, sixteen tenants had children living with them during all or part of the tenancy. (R SF Par. 36). In addition, it is undisputed that several other tenants had grandchildren or other children regularly

6

visit them at Greenwillow. (R SF Par. 36). It is also undisputed that Barbara Larson (Larson), who assisted in the leasing of some units, was never told to avoid leasing to tenants with children. (R SF Par. 30). Thus, the evidence showing that some testers did not receive a call back from Manly when inquiring about an apartment is not sufficient to create a genuinely disputed issue as to Manly's intent to discriminate.

    2. Letters

Plaintiffs argue that Manly sent them letters (Letters), which are evidence of an intent to discriminate. In the Letters, Manly informed Plaintiffs that children should not use the front yard of Greenwillow as a play area. (P Ex. A, B). Plaintiffs argue that denying Plaintiffs' children access to the front yard to play somehow imposes restrictions upon Plaintiffs that violate Section 3604. Plaintiffs also contend that the Letters specifically targeted the children at Greenwillow, showing an animosity by Manly towards families with children. However, the undisputed facts show that Manly sent the Letters in direct response to complaints from other tenants about the noise of children. (R SF Par. 25, 26). Thus, the Letters naturally referenced the conduct of children at Greenwillow since complaints were lodged about the activities of some children. Contrary to Plaintiffs' assertion, the undisputed facts show that Manly did not prohibit Plaintiffs' children from playing

7

outside of the complex in all areas and "engag[ing] in normal childhood activities. . . ." (Ans. 9). In the Letters, Manly merely made certain parts of the front yard off limits for the benefit of all tenants, and is undisputed that there was a nearby park where the children had access to engage in activities that required a large open field. (R SF Par. 6).

It is undisputed that Manly received multiple complaints, including one written complaint about children playing outside around Greenwillow. (R SF Par. 25, 26). Manly also specifically indicated in the Letters that she had received the complaints by other tenants. (R SF Par. 25, 26). Manly also contends that the children's use of the yard at Greenwillow was damaging the landscaping. (SF Par. 22). The FHA does not provide Plaintiffs and their children with the right to use their rental property in a manner that causes property damage or is disruptive and interferes with the use and enjoyment of property by other tenants.

Plaintiffs also argue that there was not sufficient noise from their children to make any of the complaints "a valid complaint." (R SF Par. 24). However, this court does not sit as the reviewer of the merits of every tenant complaint and landlord decision under the FHA. Manly, as the landlord, received complaints from other tenants, and had an obligation to act to address such complaints. Plaintiffs fall far short of pointing to any evidence that indicates that the Letters were merely a pretext

by Manly to discriminate against Plaintiffs. Nor have Plaintiffs pointed to anything in their leases that would have in any way prevented Manly from indicating that children should avoid playing in the front yard at Greenwillow. Thus, the Letters, when viewed with the above undisputed facts, do not indicate that Manly held a discriminatory animus against Plaintiffs because they have children.

     3. Conflicts with Plaintiffs

Plaintiffs also argue that a discriminatory animus can be inferred from various conflicts Plaintiffs had with Manly while they were tenants. Manly contends that in the Spring of 2011, Manly sought to change the furnace filter in the unit rented by Tyrrell, and Tyrrell refused to allow Manly into the unit. (SF Par. 16). Manly also contends that in the Summer of 2011, Tyrrell refused to allow Manly to inspect the basement of Tyrrell's unit after a heavy rainfall to check for flooding, and that Manly was not allowed into the unit on another day when the water heater needed to be relit. (R SF Par. 17, 18). Manly also contends that Tyrrell acted improperly by requesting that a dryer repairman come to Tyrrell's unit and by having work billed to Manly without first consulting Manly. (R SF Par. 19). Manly also contends that in May 2011, Dini yelled at her, calling her a "Nazi and old hag" and telling her that "the other tenants should stay indoors if they do not like the noise." (SF Par. 27).

9

Plaintiffs provide their own version of events in regard to the above incidents, but the evidence provided by both sides clearly illustrates, at most, a personal animosity between Manly and Plaintiffs, rather than an animus against Plaintiffs because they have children. In regard to the water heater incident, Plaintiffs do not dispute that Tyrrell refused to allow Manly into the unit, but argues that Manly did not provide sufficient advance notice to Tyrrell. (R SF Par. 16). In regard to the request by Manly to check for flooding, Plaintiffs again argue that Manly should have provided more advance notice before seeking an inspection of the unit. (R SF Par. 17). Such disputes over whether a landlord has provided sufficient notice to change a furnace filter or check a basement for flooding have nothing to do with the FHA or the FHA's concerns regarding discriminatory treatment of tenants because they have children. In regard to the alleged statements made by Dini calling Manly names, Dini denies making the statements, but does not deny that there was a heated conflict between Dini and Manly. (SF Par. 27). Thus, although there is evidence of personal animosity between Manly and Plaintiffs, there is not sufficient evidence showing that any animosity held by Manly was related to the fact that Plaintiffs have children. In addition, the undisputed fact that Manly has rented units to many other tenants with children, and the absence of evidence pointed to by Plaintiffs showing that any other tenants with children were targeted by Manly, as Plaintiffs claim to

10

have been, further illustrates that the disputes at issue in this case relate to personal conflicts and do not raise FHA concerns.

      4.  Misconduct of Children

Plaintiffs contend that it was not their children that engaged in the misconduct and that their children were wrongfully accused of the misconduct.  However, Plaintiffs also do admit to some misconduct on the part of their children.  For example, it is undisputed that in 2011, Tyrrell's daughter carved her initials in fresh concrete at Greenwillow.  (R SF Par. 20).  Manly also contends that she observed and suspected Plaintiffs' children of: (1) playing "ding dong ditch" on other units, (2) making chalk drawings of Manly on the sidewalk with insulting captions, (3) riding bikes in the yard, throwing bikes in the bushes, and damaging landscaping, (4) blocking other tenants' doors with bicycles and toys, (5) removing rent signs from the front yard, and (6) running and yelling around the building at late hours.  (SF Par. 22, 25).  In addition, Larson, who assisted in the leasing of units at Greenwillow, also contends that she observed similar problems and disturbances, including incidents of "ding-dong-ditch" while she was attempting to show units to prospective renters.  (SF Par. 32).  Plaintiffs contend that there is not sufficient evidence that shows that it was their children that engaged in the misconduct at Greenwillow.  However, the

FHA does not allow a court to step into the shoes of a landlord and revisit each of the landlord's decisions. Whether Manly ultimately identified the correct children responsible for the misconduct and whether other tenants with children may have avoided blame is not directly at issue in regard to the FHA claim.

Plaintiffs also admit, pursuant to Local Rule 56.1, that in February 2011, Manly observed Tyrrell's children and Dini's children climbing on snow-covered evergreen bushes. (R SF Par. 15). Plaintiffs disagree with Manly's belief that such conduct caused permanent damage to the bushes. (R SF Par. 15). However, again, the FHA is not a mechanism to micro-manage landlords' decisions or to make assessments of what damage has been done to property. Thus, the FHA is not a proper mechanism to resolve whether evergreen bushes can be damaged by climbing on them when covered in snow. Such an inquiry regarding a landlord/tenant dispute is far afield from the concerns of the FHA.

Plaintiffs also argue that the multiple complaints by other tenants were not legitimate complaints, and that even if their children did engage in the alleged misconduct it was not sufficient to justify evicting Plaintiffs. However, the undisputed record shows that Plaintiffs were not evicted. Manly merely decided not to enter into a new lease contract with Plaintiffs at the expiration of their leases. In addition, although Plaintiffs contend that the misconduct was not serious, harassing

12

other tenants by ringing doorbells, damaging landscaping, and making excessive noise are serious problems that other tenants, including other tenants with children, were not required to endure. Thus, the evidence concerning misconduct by children at Greenwillow shows that Manly did not act other than on a legitimate, non-discriminatory basis in addressing the interests of all tenants.

     5. Renewal of Lease

Plaintiffs also argue that the fact that their leases were not renewed shows a discriminatory animus against them. As indicated above, it is undisputed that Manly did renew Dini's lease once. There is no evidence that Manly evicted Plaintiffs prior to the expiration of the leases, and the FHA does not provide that Plaintiffs were entitled under the law to have their leases renewed. It was Manly's decision, as landlord, as to whether to engage in a new lease contract with Plaintiffs, and based on the conflicts with Plaintiffs and complaints from other tenants, Manly had ample non-discriminatory justification in declining to renew Plaintiffs' leases. Plaintiffs are not forever entitled to live at Greenwillow merely because they have children. The fact that there is evidence that other tenants with children still reside at Greenwillow shows that the renewal decisions as to Plaintiffs related to the particular disputes with Plaintiffs, rather than the fact that Plaintiffs have children. (R SF. Par. 36). Finally,

even when considering all of the evidence in the record in its totality, there is not sufficient evidence for a reasonable trier of fact to infer an intent to discriminate on the part of Manly in violation of Section 3604. Therefore, Manly's motion for summary judgment on the Section 3604 claims is granted.

B. Section 3617 Claims

Manly argues that there is not sufficient evidence that shows that she violated Section 3617. Section 3617 provides, in part, the following:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Based on the undisputed facts referenced above in regard to the Section 3604 claims, Plaintiffs cannot succeed on their Section 3617 claims. Plaintiffs contend, for example, that Manly harassed and threatened them by sending them the Letters. However, as indicated above, Plaintiffs do not dispute that Manly had received complaints from prior tenants prior to the sending of the Letters. Thus, the undisputed facts show that the sending of the Letters was not part of an effort to "unlawful[ly] to coerce, intimidate, threaten, or interfere with" Plaintiffs "in the exercise or enjoyment of" their rights under the FHA, "or on account of Plaintiffs "

having exercised or enjoyed," rights under the FHA. Nor have Plaintiffs pointed to any provision in the leases signed by Plaintiffs or any portion of the FHA that prevented Manly from setting restrictions on the use of the front yard at Greenwillow. The Letters did specifically reference the play of children, but it is undisputed that the tenant complaints that led to the Letters related specifically to the play of children. There is also evidence of conflicts between Plaintiffs and Manly, such as when Tyrrell refused to allow Manly to inspect the basement of Tyrrell's unit after a heavy rainfall to check for flooding, and such as when Manly was not allowed into the unit on another day when the water heater needed to be relit. Such disagreements, however, do not indicate any intent by Manly to harass or threaten Plaintiffs, unlawfully inhibit Plaintiffs in the exercise of their FHA rights, or retaliate against them because they exercised their rights under the FHA. The FHA does not immunize tenants with children from meeting legitimate demands of landlords to the same extent as any other tenants. Even when considering all of the evidence in the record in its totality, there is not sufficient evidence for a reasonable trier of fact to infer a violation of Section 3617. Therefore, Manly's motion for summary judgment on the Section 3617 claims is granted.

II. IHRA Claims

Having resolved the federal claims in this case, the court must determine whether to continue to exercise supplemental jurisdiction over the remaining state law claims. Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, in exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining IHRA state law claims. *See, e.g., East-Miller*, 421 F.3d at 564 (stating that "[t]he district court properly dismissed [the plaintiff's] state law tort claims without prejudice because the federal [FHA] claims were dismissed on summary judgment").

16

Therefore, the IHRA claims are dismissed without prejudice.

## CONCLUSION

Based on the foregoing analysis, Manly's motion for summary judgment on the FHA claims is granted and the remaining IHRA claims are dismissed without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 29, 2012